UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CV-21707-DAMIAN/VALLE

ROBERT MICHAEL MISIC,

    Plaintiff,

v.

MARTIN O'MALLEY,[1] Commissioner of
Social Security Administration,

    Defendant.

_____

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff Robert Michael Misic's Motion for Summary Judgment (ECF No. 21) and Defendant's Motion for Summary Judgment (ECF No. 22) (together, the "Motions"). United States District Judge Melissa Damian has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 30).

After due consideration of the record and the parties' briefs, including Plaintiff's Statement of Undisputed Material Facts (ECF No. 20), Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 25), the parties' Joint Status Report (ECF No. 37), and being otherwise duly advised in the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Motion for Summary Judgment be **DENIED**, and the Administrative Law Judge's Decision ("ALJ Decision") be **REMANDED** for the reasons set forth below.

---

[1] Martin O'Malley has been appointed as Commissioner of Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi (previously Acting Commissioner) as Defendant in this case.

## I.  RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This case stems from the overpayment of Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). On July 9, 2006, Plaintiff was injured while working as an air traffic controller. (ECF No. 20 at 1). As a result, Plaintiff began receiving worker's compensation benefits from the U.S. Department of Labor. *Id.* Two years later, in October 2008, Plaintiff applied for DIB from the Social Security Administration (the "SSA"). *Id.* at 2. Plaintiff properly disclosed to the SSA his receipt of worker's compensation benefits. *See* (R. 20).[2] In June 2010, the SSA approved Plaintiff's application and notified Plaintiff that he would receive monthly DIB payments, retroactive to October 2007 (12 months prior to his application). (ECF No. 20 at 2); (R. 106-12) (the "Notice of Award"). The Notice of Award also explained that Plaintiff's DIB payment would be reduced to offset his worker's compensation benefits. (R. 107).

Between July 2016 and November 2016, more than five years after Plaintiff began receiving monthly DIB payments, the SSA notified Plaintiff that he had been overpaid $139,371 in DIB from October 2007 through June 2016.[3] (R. 18, 141-47); *see also* (R. 125-29, 131-34, 137-40). Thereafter, Plaintiff requested a waiver of the overpayment on the grounds that he was not at fault for the overpayment, that he could not afford to repay the money, and that it would be unfair to require him to do so. *See* (R. 18, 149, 151, 153-76).

Following a personal conference with SSA representatives, the SSA denied Plaintiff's request for a waiver on October 25, 2017. (R. 18, 178-81). Plaintiff then requested a hearing before an ALJ, which was held on August 31, 2021. (R. 26-55, 184-85, 274). After a hearing, the

---

[2] All references are to the record of the administrative proceeding. *See* (ECF No. 11).

[3] The last Notice of Overpayment, dated November 2016, reflects an overpayment of $140,470. (R. 143-44). The ALJ's Decision, however, lists the overpayment as $139,371. (R. 18). Accordingly, the undersigned will use the lower figure ($139,371) as the overpayment amount.

ALJ issued his Decision, finding that although Plaintiff was not at fault for the overpayment, recovery of the overpayment would not be waived because recovery of the funds did not defeat the purpose of the Act and would not be against equity and good conscience. (R. 15-25).

Thereafter, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision (R. 6-14), rendering the ALJ's Decision the Commissioner's "final decision." *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. *See* (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.    STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Upon review, it is not for this Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). Indeed, even if the evidence preponderates against the ALJ's Decision and the undersigned would resolve the disputed factual issues differently, this Court must nevertheless affirm if substantial evidence supports the ALJ's findings. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987)). While this evidentiary standard is not high, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The same standard of review applies to overpayment and waiver determinations. *See Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982).

### III.    THE ALJ'S DECISION

In considering Plaintiff's request for a waiver of the overpayment, the ALJ concluded that Plaintiff had "fulfilled his reporting responsibilities and properly informed the [SSA] of his worker's compensation benefits," so Plaintiff was not at fault in causing the overpayment. (R. 20). Neither Plaintiff nor Defendant challenge the ALJ's finding that Plaintiff was not at fault. *See generally* (ECF Nos. 20, 21, 22, 25).

Next, the ALJ found that recovery of the overpayment would not defeat the purpose of the Act. (R. 20). In reaching this conclusion, the ALJ properly considered Plaintiff's finances and determined that Plaintiff "ha[d] not shown that his income and resources are needed for ordinary and necessary living expenses under the criteria set out in 20 C.F.R. § 404.508."[4] (R. 20). Again, neither Plaintiff nor Defendant challenge the ALJ's conclusion that recovery of the overpayment would not defeat the purposes of the Act. *See generally* (ECF Nos. 20, 21, 22, 25).

Lastly, the ALJ concluded that recovery of the overpayment would not be against equity and good conscience, thus denying Plaintiff's request for a waiver. (R. 20-21). In rejecting Plaintiff's argument that he had detrimentally relied on the DIB payments to undertake major home renovations, the ALJ noted that Plaintiff "ha[d] not provided probative evidence, other than his statements, that the renovation of his residence cost[] over $200,000" or "that [Plaintiff] incurred construction costs before 2015." (R. 20). The ALJ also noted that Plaintiff did not have a "reasonable expectation of ongoing disability benefits" because the SSA's Notice of Award, issued June 2010, alerted Plaintiff that his DIB may cease at any time pending review. (R. 20) (citing R. 111). Plaintiff challenges the ALJ's determination denying his request for a waiver of the

---

[4] The determination of whether repayment defeats the purpose of the Act "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. § 404.508(a). This requires the ALJ to consider, as the ALJ did here, Plaintiff's finances. *See, e.g.*, *Erickson v. Comm'r of Soc. Sec.*, 431 F. App'x 809, 812 (11th Cir. 2011).

overpayment.  *See generally* (ECF No. 21, 25).

## IV.  DISCUSSION

Plaintiff raises three arguments on appeal.  First, Plaintiff challenges the ALJ's conclusion that recovery of the overpayment would not be against equity and good conscience.  (ECF No. 21 at 4-5).  Next, Plaintiff argues the ALJ erred by not considering certain post-hearing evidence.  *Id.* at 5-6.  Lastly, Plaintiff argues that the ALJ erred by not incorporating a complete Exhibit List with his Decision.  *Id.* at 6-7.  Because the undersigned finds that the first issue is dispositive, however, the undersigned need not reach Plaintiff's other allegations of error.  *See Harrell v. Colvin*, No. 14-CV-20513, 2015 WL 574006, at *5 (S.D. Fla. Feb. 11, 2015), *report and recommendation adopted*, No. 14-CIV-20513, 2015 WL 12533120 (S.D. Fla. Mar. 5, 2015).

*SSA Regulations on Overpayment*

Pursuant to the Act, when a claimant receives both disability and worker's compensation benefits, the SSA adjusts the claimant's monthly disability benefits to account for the worker's compensation award.  *See* 42 U.S.C. § 424a.  Nonetheless, a claimant who has been overpaid disability benefits may request that the SSA waive recovery of the overpayment.  *See* 20 C.F.R. § 404.506(b).  The party seeking a waiver, however, bears the burden of establishing that he is entitled to the waiver.  *See Viehman*, 679 F.2d at 227.  To be eligible for a waiver of overpayment, a claimant must establish that: (i) he is without fault; and (ii) repayment of the funds would defeat the purpose of the Act; or (iii) repayment of the funds would "be against equity and good conscience." 42 U.S.C. § 404(b)(1); 20 C.F.R. § 404.506(a); *see Jefferson v. Bowen*, 794 F.2d 631 (11th Cir. 1986).  As discussed above, the parties agree that Plaintiff is without fault and that recovery of the overpayment would not defeat the purposes of the Act.  Thus, the only issue before the Court is whether the ALJ erred in denying Plaintiff's request for a waiver on the grounds that

recovery was not against equity and good conscience.[5]  *See* (R. 20).

Finding that recovery of an overpayment would be "against equity and good conscience" requires more than a claimant "merely being without fault."  *Alford v. Comm'r of Soc. Sec.*, 17-CV-1200, 2019 WL 4727813, at *6 (M.D. Fla. Sept. 27, 2019) (citations omitted); *see Davis v. Bowen*, 840 F.2d 822, 824-25 (11th Cir. 1988) (despite claimant being "without fault" for overpayment, repayment was not "against equity and good conscience" and did not defeat the purpose of the Act).  But recovery of an overpayment can be found to be "against equity and good conscience" if, for example, the claimant "changed his position for the worse" or relinquished a valuable right in reliance upon a notice that a payment would be made or because of the overpayment itself.  *See* 20 C.F.R. § 404.509(a)(1).  The SSA's Program Operations Manual System ("POMS"), in turn, further describes circumstances that may constitute a "change of position for the worse" within the meaning of the Act:

> A beneficiary has changed his . . . position for the worse when the beneficiary reasonably relied on receiving benefit payments and then decides to do something he . . . would not have done if he . . . had not been entitled to benefits payments. To establish a change in position for the worse, the beneficiary would have to show that he . . . did something he . . . would not have done, but for the receipt of the overpaid benefits, not simply that he . . . had spent the benefits payments received.

POMS GN 02250.150(B)(2); *see* POMS SI 02260.025(B)(2) (defining the same phrase in context of Supplemental Security Income overpayments).

The POMS then provides examples of circumstances that reflect a "change of position for the worse."  One such example, arguably somewhat similar to Plaintiff's argument that he incurred substantial construction costs relying on his (overpaid) benefits, is the situation where a claimant purchases a more expensive home, relying on his (overpaid) benefits to meet the financial

---

[5] Unlike the financial analysis required in determining whether repayment defeats the purposes of the Act, the determination of whether recovery would be against equity and good conscience does not depend on an individual's financial circumstances.  *See* 20 C.F.R. § 404.509(b); *Bellm v. Astrue*, No. 11-CV-301, 2012 WL 13129966, at *4 (M.D. Fla. Sept. 30, 2012).

6

commitment, and is unable to withdraw from the home purchase without incurring significant financial loss. POMS GN 02250.150(B)(2); *see* POMS SI 02260.025(B)(2); *see also* POMS GN 02250.150(B)(3), SI 02260.025(B)(3) (considerations for determining whether a recipient changed his position for the worse include, among others, whether the recipient: (i) acquired something that he would not have acquired if the payment amount were lower; (ii) has a new mortgage payment that is significantly higher than the payment for a previous home; or (iii) would face criminal or civil actions if he is unable to maintain a financial obligation (e.g., mortgage, loan etc.)).

Plaintiff argues that he detrimentally relied on his DIB benefits to undertake substantial home renovations. (ECF No. 21 at 4-5). According to Plaintiff, he first retained an architect in January 2011, approximately six months after receipt of the Notice of Award. (R. 35). Thereafter, Plaintiff engaged a second architect and received a proposal for the work to his home. (R. 36-37). In February 2015, almost a year before the July 2016 Notice of Overpayment, Plaintiff entered into a contract to pay $134,095.13 for home renovations in reliance upon the DIB payments he had received for years.[6] (ECF No. 21 at 4-5); *see also* (ECF No. 21-1 at 1-32) (construction contract between PKTL LLC and Plaintiff). Construction on Plaintiff's home began the following month but stopped when a dispute arose with the contractor, resulting in litigation. *See* (R. 36, 41, 43). At the hearing and in his Motion, Plaintiff argues that "[he] never would have engaged in the repairs of [his] townhouse to the extent that [he] did if [he] had known that the [SSA] had . . . made an error" in calculating his benefits.[7] (R. 46); *see* (ECF No. 21 at 5) (Plaintiff's argument that he would "not have taken on such a massive project" had he known that he had been overpaid and

---

[6] Plaintiff testified that he executed two contracts for work to the interior and exterior of his home. It is unclear whether the contract for the interior of the home was submitted into evidence and reviewed by the ALJ. *See* (R. 37-39, 51-52).

[7] Relatedly, Plaintiff testified that he had paid more than $60,000 for repairs before ultimately stopping payment and filing a lawsuit against his contractor. *See* (R. 51).

would have to "repay a substantial amount").

In rejecting Plaintiff's argument, the ALJ stated:

[Plaintiff] has not provided probative evidence, other than his statements, that the renovation of his residence cost[] over $200,000. Further, [Plaintiff] has not furnished probative evidence showing that he incurred construction costs before 2015, which is nearly five years after he was approved for disability benefits. Notably, [Plaintiff] was informed in his Notice of Award that his disability benefits may be ceased at any time pending a review (Exhibit 3B at 6). Therefore, I find that [Plaintiff] did not have a reasonable expectation of ongoing disability benefits at the time he began construction on his home. Since there was no reasonable expectation for ongoing disability benefits at the time he incurred construction costs, I find [Plaintiff's] allegations unpersuasive.

(R. 20-21).

The ALJ's cursory statements, without discussion of the applicable Regulations, the POMS, or the record evidence (including any post-hearing evidence),[8] makes it impossible for the undersigned to determine whether the ALJ applied the proper legal standards and whether substantial evidence supports the ALJ's Decision. Against this background, it is not for the undersigned to re-weigh the evidence or make new findings of fact. *Winschel*, 631 F.3d at 1178. Although good reasons may exist supporting the ALJ's conclusion that it is not against equity and good conscience to require Plaintiff to repay the overpayment, the undersigned cannot affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Accordingly, the ALJ's Decision should be reversed and remanded to allow the ALJ to fully discuss the record evidence and more clearly articulate his rationale for concluding that denial of Plaintiff's waiver of the overpayment would not be against

---

[8] At the hearing, the ALJ requested that Plaintiff submit additional evidence, such as contracts and other documentation, to support the expenses Plaintiff claimed to have incurred. *See* (R. 52). According to Plaintiff, his attorney faxed the requested documentation to the ALJ, but he is unsure whether the ALJ received or considered it. *See* (ECF Nos. 21 at 5, 25 at 4). Among the additional evidence Plaintiff claims to have submitted are numerous cancelled checks, dated between February 2015 and June 2018, reflecting approximately $86,300 in payments to several home renovation contractors. *See* (ECF No. 25 at 13-31) (cancelled checks attached as exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment).

8

equity and good conscience. In so doing, the ALJ should explicitly consider POMS GN 02250.150(B)(2) (providing example of situation in which overpayment recovery is against equity and good conscience because claimant changed his position for the worse in reliance upon the overpaid benefits) and any properly received post-hearing evidence of Plaintiff's home renovation expenses.

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 21) be **GRANTED,** that Defendant's Motion for Summary Judgment (ECF No. 22) be **DENIED**, and that the ALJ's Decision be **REMANDED**.

Within **eight days** after being served with this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.[9] 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on August 26, 2024.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Melissa Damian
    All Counsel of Record

---

[9] Because seven days from the date of this Report and Recommendation falls on a holiday, the deadline for objections is Tuesday, September 3, 2024.